**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARVEY PATRICK SHORT, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 17-4544 |
| MS. ADAMS, *et al.*, | |
| *Defendants.* | |

**PAPPERT, J.**                                                    **January 25, 2019**

## MEMORANDUM

After violating his parole, *pro se* litigant Plaintiff Harvey Patrick Short was sent to Coleman Hall where he claims he was denied dental treatment, received inadequate medical care and was exposed to toxic mold. He sued the GEO Group, Inc., Director Brown, Head Nurse Adams, Nurse Neil and Parole Agent Anthony Chapman for violating his rights under 42 U.S.C. § 1983, the United States Constitution and Pennsylvania state law. The Defendants filed Motions to Dismiss for failure to state a claim. The Court grants in part and denies in part the Defendants' Motions, allowing Short an opportunity, consistent with this Memorandum, to file a Second Amended Complaint.

I

A

Coleman Hall is a halfway house run by the GEO Group, a private corporation with which the Commonwealth has contracted, that provides housing, medical care and reentry services. (Am. Compl. ¶¶ 3–4, ECF No. 20.) On August 31, 2017, Short was

1

arrested, taken into custody for violating his parole and sent to Coleman Hall, where he remained until October 19. (*Id.* at ¶¶ 1, 23.)

Nurse Neil examined Short on September 1, during which Short informed Neil of his high blood pressure, mental illness and "dental issues or conditions." (*Id.* at ¶¶ 7–8.) Although Short filed request forms for his medical conditions, Neil allegedly "tore [them] up." (*Id.* at ¶ 13.) Short claims that he did not receive his blood pressure and psychiatric medications until eight or nine days after arriving at Coleman Hall. (*Id.* at ¶¶ 13, 15.)[1] During that time, he "experienced irregular heartbeats and chest pain on and off" and "suicidalness [sic], mental distress, lack of sleep, loss of appetite and major physical discomforts." (*Id.*) Short also contends he told Neil he needed dental treatment for a cavity, loose filling, broken tooth and an undefined "gum infection." (*Id.* at ¶ 8.) Sometime thereafter, Neil brought Short to the medical department and told Short that he could not receive dental treatment because the GEO Group had a "policy or practice" that required residents to be housed at Coleman Hall for two or more years before they could obtain dental care. (*Id.* at ¶ 11.)

Short alleges that Adams, Brown and Chapman confirmed the GEO Group's policy. First, Short claims that he spoke with Adams about the policy as she walked through the halls, (*id.* at ¶ 14), and that Adams allegedly instructed Neil not to treat parolees unless they were residents for two or more years, (*id.* at ¶ 22). Second, Short discussed the policy with Brown when she visited his unit, (*id.* at ¶ 19), and Brown did not answer his request forms and grievance forms, (*id.* at ¶ 18). Finally, Agent Chapman refused to let Short leave Coleman Hall to seek dental treatment on October

---

[1]     In September of 2017, the GEO Group's "Observation Counselors" also allegedly dispensed the wrong medications to Short. (*Id.* at ¶ 16.) Short did not name them as defendants in the case.

6, (*id.* at ¶ 20), and further denied his requests "on three separate occasions," (*id.* at ¶ 21). As a result, Short suffered "extreme pain in his mouth" and had trouble "eating food, drinking hot or cold beverages, and sleeping." (*Id.* at ¶¶ 9, 12.) He contends the denial of dental care necessitated the extraction, in December of 2017 and January of 2018, of two of his teeth. (*Id.* at ¶¶ 24–25.)

Short also alleges that he was exposed to "hazardous and toxic mold conditions" and that "[m]any residents/parolees were transferred out of Coleman Hall." (*Id.* at ¶¶ 26–27.) Short claims that Coleman Hall would not release a parolee "unless Agent Chapman signed the parolee's discharge documentation." (*Id.* at ¶ 29.) Despite knowing "about the environmental health hazard," Short contends that Chapman and Brown did not remove the mold nor transfer him from Coleman Hall. (*Id.* at ¶ 27.) Consequently, Short experienced "respiratory complications, shortness of breath, elevation of blood pressure, headaches, nausea [and] fatigue." (*Id.* at ¶ 26.)

B

Short filed his original complaint on October 11, 2017. (ECF No. 1.) He amended his pleading on June 15, 2017 and asserted the following claims against all of the Defendants in their official and individual capacities: (1) deliberate indifference to serious dental needs; (2) cruel and unusual punishment under the Eighth Amendment; (3) gross negligence; (4) ordinary negligence; (5) intentional infliction of emotional and/or mental distress by outrageous and extreme conduct; (6) breach of contract; (7) interference with contract; (8) breach of fiduciary duty; (9) fraud; (10) private nuisance; (11) malpractice and (12) violation of DOC policy on medical and dental care. (Am.

Compl. at 7.)  The Defendants move to dismiss all claims against them.  (ECF Nos. 21 &
24.)

## II

### A

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure,
the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially
plausible when the facts pled "allow[ ] the court to draw the reasonable inference that
[a] defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[W]here the
well-pleaded facts do not permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is
entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a
complaint will survive a motion to dismiss.  *See Connelly v. Lane Const. Corp.*, 809 F.3d
780, 787 (3d Cir. 2016).  First, it must "take note of the elements the plaintiff must
plead to state a claim."  *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Next, it must identify the
allegations that are no more than legal conclusions and thus "not entitled to the
assumption of truth."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, where the
complaint includes well-pleaded factual allegations, the Court "should assume their
veracity and then determine whether they plausibly give rise to an entitlement to
relief."  *Id.*

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

B

Because Short is proceeding *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." *Bush v. City of Phila.*, 367 F. Supp. 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)). Moreover, in a § 1983 action, the Court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." (citation omitted)). At the same time, *pro se* litigants "must allege sufficient facts in their complaints to support a claim . . . At the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)

# III

To establish a *prima facie* case under § 1983, Short must first demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Short must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. Cal.*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

## A

Short contends that the GEO Group had a policy of providing dental care only to residents that had been at Coleman for two or more years. (Am. Compl. ¶ 11.) Construing his claim liberally, the Court analyzes this allegation under the standard for municipal liability set forth in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).[2] Generally, a municipality or a private entity

---

[2] To establish that a private entity is acting under color of state law, a plaintiff must show that there is such a "close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citation omitted)*; see Leshko v. Servis,* 423 F.3d 337, 339 (3d Cir. 2005) ("[T]o state a claim of liability under § 1983, [a plaintiff] must allege that [he] was deprived of a federal constitutional or statutory right by a state actor."); *Natale v. Camden County Corr. Facility,* 318 F.3d 575, 581–84 (3d Cir. 2003) (noting that the *Monell* doctrine may apply to private corporations but only if they are performing a municipal function, *i.e.*, acting under the color of state law). Short alleges that the GEO Group "was paid money by" and "contracted with the Commonwealth of Pennsylvania and the PA Division of Corrections to house and treat parolees." (Am. Compl. ¶¶ 3–4.) Taking these facts as true, the Court treats the GEO Group as a state actor for purposes of § 1983 because it provides services to a facility that functions like a prison. *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 411 (3d Cir. 1999) (identifying restrictions placed upon plaintiff at a halfway house and determining that "these restrictions . . . amount to institutional confinement"); *Stephens v. Canino*, 71 F. Supp. 3d 510, 514 (E.D. Pa. 2014) ("Although life in a halfway house is less restrictive than within the prison, the prisoner remains in state custody subject to restraints on his freedom. In other words, placement in a halfway house is still confinement.") Nonetheless, the Court focuses its discussion on Short's alleged constitutional violations. *See Brandolph v. Pa.*, No. CIV. A. 93-5145, 1993 WL 498021, at *1

performing a municipal function will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990); *see also Natale,* 318 F.3d at 583. Rather, a private entity can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 658).

Accordingly, a successful *Monell* claim must establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the private entity and (3) that the constitutional violation was caused by the private entity's policy or custom. *See Natale,* 318 F.3d at 583–84; *Monell*, 436 U.S. at 658. A policy "is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (citation and quotation omitted). A custom must be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so *well-settled* and *permanent* as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007) (emphasis added).

Short fails to state a claim under *Monell*. He conclusorily alleges that the GEO Group had a "policy or practice that a resident/parolee had to be at Coleman Hall for two years or more to get dental care." (Am. Compl. ¶ 11.) Merely reciting that such a policy exists, as Short has done here, is insufficient. *See O'Hara v. Cty. of Allegheny*,

(E.D. Pa. Nov. 30, 1993) (noting that "there may be an issue as to whether [the halfway house] is a state actor for § 1983 purposes" but focusing its analysis on whether the plaintiff was deprived of constitutional rights).

No. CIV.A. 12-818, 2013 WL 501374, at *4 (W.D. Pa. Feb. 8, 2013) ("Mere allegations that a municipality had a [policy or] custom of ignoring constitutional rights are insufficient to bring a *Monell* claim.")  The allegations in Short's Amended Complaint also fail to allege conduct attributable to a policymaker.  *See McTernan v. City of York, PA*, 564 F.3d 636, 659 (3d Cir. 2009) (finding the allegations deficient "[b]ecause [the appellant] does not adequately plead a custom or policy, or a link between the challenged restriction and a municipal decisionmaker").  Short's *Monell* claim is dismissed without prejudice.

## B

"The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain.'"  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  To establish a claim for inadequate medical care under the Eighth Amendment, Short must show (1) that the Defendants were deliberately indifferent to his medical needs and (2) that those needs were serious.  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).[3]

Deliberate indifference "requires obduracy and wantonness . . . which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk."  *Rouse*, 182 F.3d at 197.  The Third Circuit has found deliberate indifference where the

---

[3]     The Eighth Amendment's prohibition against deliberate indifference applies to Short's claims.  In *Giddings v. Joseph Coleman Center*, the court found that the plaintiff's confinement to the same halfway house at issue here made his status "akin to that of a convicted person punished by incarceration" because "[the plaintiff] was essentially incarcerated and being punished."  473 F. Supp. 2d 617, 623 (E.D. Pa. 2007), *aff'd*, 278 Fed. App'x 131 (3d Cir. 2008).  *See also Samson v. Cal.*, 547 U.S. 843, 848 (2006) (holding that "parolees are on the 'continuum' of state-imposed punishments"); *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972) (holding that "parole is an established variation on imprisonment of convicted criminals").

prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason or (3) prevents a prisoner from receiving needed or recommended medical treatment. *Id.* (citations omitted). The court has further held:

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care,' the deliberate indifference standard has been met.

*Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (ed Cir. 1987) (citations omitted).

A medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 347 (citation omitted). Where denial or delay causes an inmate to suffer "a life-long handicap or permanent loss," the medical need is considered serious. *Id.*

1

Short sues Brown, Adams, Neil and Chapman in their official and individual capacities. "Official capacity suits . . . are just another way of pleading an action against an entity of which an officer is an agent." *Id.*; *see also Monell*, 436 U.S. at 690. Therefore, if "the governmental entity receives notice of the suit and an opportunity to respond to it, an official-capacity suit is, in all respects, to be treated as a suit against the government entity itself." *Id.* (citing *Graham*, 473 U.S. at 166). Because Short is suing the GEO Group and because the Court interprets his Amended Complaint to allege that Brown, Adams and Neil are GEO Group employees, *see* (Am. Compl. at 2),

his claims against those defendants in their official capacities are redundant. Moreover, Short fails to state a claim against Chapman in his official capacity as a parole agent. The Supreme Court in *Will v. Michigan Department of State Police* held that a state official acting in his official capacity is not a "person" under § 1983 and therefore not amenable to suit. 491 U.S. 58, 71 (1989). Chapman is also entitled to immunity under the Eleventh Amendment. *See Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("We have held that Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity.").

The Court therefore analyzes Short's claims against Brown, Adams, Neil and Chapman in their individual capacities. "Individual, or personal, capacity suits seek to impose personal liability upon a government official for actions he takes under the color of state law." *Helm v. Palo*, No. 14-6528, 2015 WL 437661, at *9 (E.D. Pa. Feb. 3, 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). To state an Eighth Amendment claim against the Defendants, Short must demonstrate their personal involvement in the alleged violations of his constitutional rights.

Short can allege such personal involvement under either of two theories: (1) a supervisor's personal direction or actual knowledge and acquiescence in a constitutional violation, *id.* (quoting *Evancho*, 423 F.3d at 353); or (2) that a defendant, in his role as policymaker, acted with deliberate indifference in establishing a policy that directly caused the alleged constitutional violation, *Brown v. May*, No. 16-01873, 2017 WL 2178122, at *2 (E.D. Pa. May 17, 2017). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity," *Rode v.*

10

*Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). To prove liability under the deliberate indifference theory, Short must identify "a supervisory policy or practice [that the supervisor] failed to employ, and then provide that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was created by the failure to implement the supervisory practice or procedure." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)); *Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir. 2001).

i

Short states that he "informed [Brown] about the denial of dental care and the two years or more policy, and she did nothing." (Am. Compl. ¶ 19.) Brown also allegedly "failed or refused to answer" Short's grievance forms. (*Id.* at ¶ 18.) Short fails to allege that Brown was directly involved in the alleged conduct or that she was a policymaker who acted with deliberate indifference.

Additionally, Brown is a non-medical defendant whose conduct cannot amount to deliberate indifference when Short was examined by the medical staff at Coleman Hall. The Third Circuit has stated that "[i]f a prisoner is under the care of medical experts . . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). In *Spruill*, the court affirmed dismissal of claims against a non-medical defendant, stating that such an official is not chargeable with the Eighth Amendment scienter requirement of deliberate indifference "absent a reason to believe (or actual knowledge) that prison

doctors or their assistants are mistreating (or not treating) a prisoner." *Id.* at 236.

Moreover, "prison officials cannot be held to be deliberately indifferent merely because

they did not respond to the medical complaints of a prisoner who was already being

treated by the prison medical staff." *Spencer v. Courtier*, 552 Fed. App'x 121, 124 (3d

Cir. 2014) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)). Short does not

allege any facts to suggest Brown was not "justified in believing that [he was] in

capable hands." *Spruill*, 372 F.3d at 236. Short's claims against Brown with respect to

his denial of dental care and inadequate medical treatment are dismissed with

prejudice.

### ii

Short claims that he spoke with Adams about the GEO Group's policy as she

walked through the halls, (*id.* at ¶ 14), and that Adams allegedly instructed Neil not to

treat parolees unless they qualified for dental care under the policy, (*id.* at ¶ 22). These

conclusory allegations do not sufficiently allege that Adams was directly involved in

any decisions or denials of treatment involving Short or that she was a policymaker

that acted with deliberate indifference. Short's claim against Adams is accordingly

dismissed without prejudice.[4]

### iii

Short alleges that he told Neil about his gum infection, cavity, "filing [sic] [that]

was falling out" and "tooth that [had] broke[n] off" but that Neil nonetheless denied him

dental treatment. (*Id.* at ¶¶ 8, 11.) Short claims that he suffered "extreme pain in his

mouth" and had trouble "eating food, drinking hot or cold beverages, and sleeping." (*Id.*

---

[4]     Even liberally construing Short's Amended Complaint, Short does not assert a claim against
Adams concerning the delay in receiving his blood pressure and psychiatric medications.

at ¶¶ 9, 12.)  After leaving Coleman Hall, he had two teeth pulled, ostensibly on account of the denial of treatment.  (*Id.* at ¶¶ 24–25.)

Courts have recognized gum infections as serious medical needs because of the substantial risks to health if left untreated.  *See Bd. v. Farnham,* 394 F.3d 469, 482–83 (7th Cir. 2005) ("[R]equiring that officials supply needed dental and medical care in the form of oral hygiene products . . . also prevents future potentially serious dental problems as tooth decay and gum infections.  The neglect of one's dental hygiene can, and frequently does, result in objectively serious dental and medical problems, which is illustrated by [the plaintiff's] need to have a number of his teeth extracted."); *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980) ("[D]ental care is one of the most important medical needs of inmates.").

Neil was informed of Short's gum infection but denied his request for dental treatment and never referred Short to a dentist throughout the entirety of his stay at Coleman Hall.  (Am. Compl. ¶ 11.)  Short left Coleman Hall on October 19, 2017.  (Id. at ¶ 23.)  He had a tooth pulled on December 8, 2017 and a second extraction on January 8, 2018.  (*Id.* at ¶ 24–25.)  Short alleges that the lack of dental care at Coleman Hall necessitated the removal of his teeth.  While discovery may reveal evidence that contradicts Short's causation argument and allow the Court to revisit the viability of this claim at summary judgment, for now the claim can go forward.

Short's claim concerning the delay in receiving his blood pressure and psychiatric medications fails because the delay does not amount to deliberate indifference.  Courts have consistently held that mere allegations of malpractice do not raise issues of constitutional import.  *See e.g., Estelle,* 429 U.S. at 106 & n. 14.  ("[A]

complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.") Nor does mere disagreement as to the proper medical treatment support a claim of an Eighth Amendment violation. *Monmouth Cty. Corr. Institutional Inmates*, 834 F.2d at 346. The denial or delay did not cause Short to suffer a "life-long handicap or permanent loss." *Monmouth Cty. Corr. Institutional Inmates*, 834 F.2d at 347. This claim is dismissed with prejudice.

iv

Short fails to state a claim against Chapman with respect to the denial of dental care for the same reasons the same claim against Brown is dismissed with prejudice. *See supra* Part III.B.1.i. Short also seemingly asserts a conditions of confinement claim under the Eighth Amendment against Chapman concerning the toxic mold conditions at Coleman Hall. (Am. Compl. ¶ 26.)[5] Prison conditions may amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities." *Tillman v. Lebanon County Correctional Facility,* 221 F.3d 410 (3d Cir. 2000). The Eighth Amendment requires that those who are incarcerated be afforded "humane conditions of confinement." *Farmer*, 511 U.S. at 832. Prison officials must

---

[5] To the extent that Short may be asserting this claim against Brown, his allegations are contradictory. Short alleges that "many residents/parolees were transferred out of Coleman Hall by Ms. Brown and Agent Chapman" but that Brown and Chapman "continued to house or confine [Short] at Coleman Hall near the mold." (Am. Compl. ¶ 27.) However, Short claims that Coleman Hall would not release a parolee "unless Agent Chapman signed the parolee's discharge documentation." (*Id.* at ¶ 29.) Taken as true, Short has not sufficiently stated that Brown had the authority to remove him from Coleman Hall. In any event, Short has not alleged that he told Brown about his conditions. Short's claim against her is accordingly dismissed without prejudice.

take reasonable measures to guarantee the safety of inmates and must provide them with adequate food, clothing, shelter, and medical care. *Id.*

The presence of toxic mold can raise a cognizable claim under the Eighth Amendment if it poses a substantial risk of serious harm and the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *see Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that inmates should not be exposed "to levels of [environmental tobacco smoke] that pose an unreasonable risk of damage to future health"); *Stokelin v. A.C.J.F. Warden*, No. CV 17-3484, 2018 WL 4357482, at *2 (D.N.J. Sept. 13, 2018) (finding that plaintiff failed to allege any risk of harm resulting from "black mold in the showers").[6] "Toxic mold which causes [an] inmate to suffer headaches, sinus problems, blurred vision, breathing difficulty, irritated eyes and fatigue cans [sic] set forth a viable conditions of confinement claim." *Johnson v. Beard*, No. 3:CV-09-886, 2014 WL 4793905, at *6 (M.D. Pa. Sept. 25, 2014) (quoting *Forde v. Fischer,* 2009 WL 5174650 *4 (D.N.J. Dec. 16, 2009); *see Smith v. Leonard*, 244 Fed. App'x 583, 584 (5th Cir. 2007) (finding plaintiff stated a constitutional claim where he alleged toxic mold and symptoms of headaches, sinus problems, blurred vision, difficulty in breathing, irritated eyes, and fatigue). *Cf. Patterson v. Quigley*, No. CV 16-1604, 2018 WL 1566793, at *5 (E.D. Pa. Mar. 30, 2018) ("[The plaintiff] has not pleaded that the mold made him ill or

---

[6]      The deliberate indifference standard also applies to Short's conditions of confinement claim. *See Wilson*, 501 U.S. at 303 ("Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*.")

somehow affected his health, which would provide plausibility that the mold was an excessive risk to his health or safety").

Short alleges that he experienced "respiratory complications, shortness of breath, elevation of blood pressure, headaches, nausea, [and] fatigue" as a result of his exposure to the toxic mold. (*Id.* at ¶ 26.) Although Short contends that residents were transferred out of Coleman Hall, (Am. Compl. ¶ 27), he does not allege that he told Chapman about his conditions, or, more importantly, that he asked Chapman (or anyone else) to transfer him because of the mold and that anyone denied such a request. Absent such allegations, Chapman obviously could not have been deliberately indifferent to Short's health or human needs. Short's claim is dismissed without prejudice.[7]

## IV

### A

The Court addresses Short's remaining state law claims against Neil.[8] Short apparently alleges negligence, gross negligence and malpractice against Neil. The elements of negligence include: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Estate of Swift by Swift v. Northeastern Hosp.,* 690 A.2d 719, 722 (Pa. Super. Ct. 1997) (citation omitted). "A nurse owes a duty of care to conduct

---

[7]      Because the court has ruled that Short's constitutional rights were not violated, the court need not consider Chapman's affirmative defense of qualified immunity. *See, e.g., Kaucher v. Cty. of Bucks,* 455 F.3d 418, 423 n.2 (3d Cir. 2006).

[8]      Given the dismissal of the federal claims against Brown, Adams and Chapman, the Court declines to exercise supplemental jurisdiction over the state law claims with respect to these defendants.

[himself] as a reasonably prudent nurse would act under the circumstances." *Navarro v. George*, 615 A.2d 890, 892 (Pa. Cmwlth. 1992). Moreover, in any negligence action, "establishing a breach of a legal duty is a condition precedent to a finding of negligence." *Id.* Pennsylvania courts generally view gross negligence as "a want of even scant care, but something less than intentional indifference to consequences of actions." *Fidelity Leasing Corp. v. Dun & Bradstreet, Inc.,* 494 F. Supp. 786, 790 (E.D. Pa. 1980).

Neil was required to act as a reasonably prudent nurse and, under the circumstances alleged, arguably failed to do so. Neil knew about Short's gum infection but failed to refer Short to a dentist to have it treated. Short states that Neil's denial of dental treatment "caused [his] dental condition to worsen or deteriorate" and resulted in two teeth extractions. (Am. Compl. ¶¶ 23, 24.) At this stage, Short's claims of negligence and gross negligence with respect to the denial of dental care can proceed.

Short also states that he informed Neil of his "high blood pressure and mental health conditions and that [he] daily ingested medications for these conditions," (*id.* at ¶ 7), but that Neil delayed in dispensing Short's blood pressure and psychiatric medications until eight or nine days after his arrival at Coleman Hall, (*id.* at ¶ 15.) Consequently, Short allegedly experienced "irregular heartbeats and chest pain" as well as "suicidalness, mental distress, lack of sleep, loss of appetite, and major physical discomforts." (*Id.* at ¶¶ 13, 15.) Short has alleged enough facts to state a claim for negligence and gross negligence claims with respect to the delay in receiving his medications.

Although the basic elements of ordinary negligence and medical malpractice are the same, medical malpractice is further defined as the "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super Ct. 2005) (citation omitted). Short's malpractice claim with respect to dental care is dismissed with prejudice. Short alleges that Neil is a nurse, not a dentist. Short's claim is that Neil did not refer Short to a dentist for dental care, not that Neil negligently rendered dental services. Neil may have been negligent or even grossly negligent in not referring Short to a dentist, but Short does not—and cannot—allege that Neil departed from "generally accepted standards" of dental practice.

Further, Short's malpractice claim with respect to Neil's delay in dispensing medication is dismissed without prejudice because, to date, he has not filed a certificate of merit. Under Pennsylvania law, "in any action based upon an allegation that a licensed professional deviated from an acceptable professional standard . . . [a certificate of merit must be filed] with the complaint or within sixty days after the filing of the complaint." Pa. R. Civ. P. 1042.3(a). In *Liggon-Redding v. Estate of Sugarman*, the Third Circuit held that this state rule is "substantive law under the *Erie* Rule and must be applied as such by federal courts." 659 F.3d 258, 265 (3d Cir. 2011). Failure to comply with Rule 1042.3 is not fatal to claims of professional liability if the plaintiff can show a "reasonable excuse" for the noncompliance. *Womer v. Hilliker,* 589 Pa. 256, 908 A.2d 269, 279–80 (2006). Short has not filed a certificate of merit nor provided a

reasonable excuse for failing to do so.  The Court grants him leave to amend to file a certificate of merit or to explain why he doesn't need one.

B

Short's remaining state law claims are dismissed with prejudice.  First, he fails to state a claim for intentional infliction of emotional distress because he has not alleged conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Hoy v. Angelone,* 720 A.2d 745, 754 (Pa. 1998) (citation omitted).[9]  Second, Short asserts claims for breach of contract and interference with contract but fails to allege or even identify the existence of any contract.  *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)) ("Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'").[10]  Third, he claims breach of a fiduciary duty but does not define what fiduciary relationship existed and with whom.  *See USG Ins. Servs., Inc. v. Bacon*, No. 2:16-CV-01024, 2016 WL 6901332, at *6 (W.D. Pa. Nov. 22, 2016) ("To allege a breach of fiduciary duty under Pennsylvania law, a plaintiff

---

[9]     Examples of outrageous behavior include: a driver fatally striking plaintiff's son and, without notifying the authorities, burying the body in a field, *Papieves v. Lawrence,* 263 A.2d 118 (Pa. 1970); defendants intentionally falsifying records to implicate plaintiff in a homicide for which plaintiff later went to jail, *Banyas v. Lower Bucks Hosp.,* 437 A.2d 1236 (Pa. Super. Ct. 1986); and a doctor telling the press that plaintiff was suffering from a fatal disease when the doctor knew that information was false, *Chuy v. Eagles Football Club,* 595 F.2d 1265 (3d Cir. 1979).

[10]     To the extent that Short suggests that the "contract" is the settlement agreement from *Patrana v. Lane*, No. CIV.A. 08-468, 2012 WL 602141, at *1 (E.D. Pa. Feb. 24, 2012), Short was not a party to that agreement.

must establish that a fiduciary or confidential relationship existed between her and the defendant.") (quoting *Harold v. McGann,* 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005)). Fourth, pursuant to Federal Rule of Civil Procedure 9(b), Short has failed to state his cause of action for fraud with "sufficient particularity." Fed. R. Civ. P. 9(b); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)).[11] Fifth, Short's private nuisance claim has no relevance in this context. *See Waschak v. Moffat,* 109 A.2d 310 (Pa. 1954) (adopting section 822 of the Restatement (Second) of Torts as the test to determine the existence of a private nuisance); *see also* Restatement (Second) of Torts § 822 (determining that liability exists only if the contested "conduct is the legal cause of an invasion of another's interest in the private use and enjoyment of land."). Finally, he claims "a violation of the DOC policy on medical/dental care" but a cause of action does not exist for this assertion that has not already been discussed in conjunction with his other claims. It would be futile for Short to amend these state law claims and the Court dismisses them with prejudice.

V

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston*, 363 F.3d at 235;

---

[11] "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200. The particularity requirement is "generally considered satisfied when a defendant has 'fair notice' of the charges against it." *U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 316 (E.D. Pa. 2012).

*Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Frasher v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). The Third Circuit has consistently held that if a claim is vulnerable to dismissal under Rule 12(b)(6), a plaintiff should be given the opportunity to amend the complaint and cure the deficiency, even if the plaintiff has not moved to amend the complaint. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Short previously amended his Complaint, and while he has not sought leave to amend his Complaint again, he is free to do so, consistent with this Memorandum, on or before **February 25, 2019**.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

GERALD J. PAPPERT, J.